IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL D. MOSS,**<br>            **Plaintiff,**<br><br>    v.<br><br>**SAL LAPIO, INC., doing business as "SAL LAPIO HOMES," and SCHLOUCH, INC.,**<br>            **Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO.  19-3210** |

**DuBois, J.**                                                                                                                       **June 15, 2020**

<u>**M E M O R A N D U M**</u>

### I.      INTRODUCTION

This is a citizen suit brought by plaintiff, Michael Moss, under the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. § 1251 *et seq.*, and the Pennsylvania Clean Streams Law ("CSL"), 35 P.S. § 691.1 *et seq.*, against defendants, Sal Lapio, Inc., *d/b/a* Sal Lapio Homes ("Lapio"), and Schlouch, Inc. ("Schlouch") for unauthorized discharge of pollutants into waters of the United States.  Presently before the Court are defendants' motions to dismiss.  For the reasons set forth below, defendants' motions are denied.

### II.     BACKGROUND

The facts below are drawn from plaintiff's Complaint.  The Court construes the Complaint in the light most favorable to plaintiff, as it must in ruling on a motion to dismiss.

#### A.  Factual Background

Plaintiff, Michael D. Moss, is a resident of Nockamixon Township, Bucks County, Pennsylvania.  Compl. ¶ 8.  A portion of Rapp Creek and its tributaries run across plaintiff's property.  *Id.*  Portions of his property abut a residential housing development known as "Harrow Manor."  *Id.*  Defendants Lapio and Schlouch are co-developers of Harrow Manor.  *Id.* ¶ 1.

Lapio was the original developer of the Harrow Manor project. *Id.* ¶ 11. Lapio was also the original recipient of the National Pollutant Discharge Elimination System ("NPDES") Permit (the "Permit") authorizing the discharge of stormwater associated with its construction activities at the Harrow Manor project. *Id.* ¶¶ 12, 36. Lapio obtained the Permit in February of 2008. *Id.* ¶ 39. The Permit, *inter alia*, required the establishment of riparian buffers and the installation of erosion and sedimentation ("E&S") controls before commencing earth disturbance activities, prohibited earth disturbance within designated riparian buffers, and required areas affected by earth disturbance activities to be promptly stabilized to minimize the potential for erosion. *Id.* ¶ 42. Plaintiff alleges that the Permit did not authorize the discharge of sediment to Rapp Creek and its tributaries. *Id.*

Schlouch became a co-developer and co-permittee on the Permit in December of 2018. *Id.* ¶¶ 12, 36, 40. The Permit was most recently renewed on March 18, 2019. *Id.* ¶ 41. Plaintiff claims that on March 19, 2019 defendants commenced earth disturbance activities without first installing E&S controls as required by the Permit. *Id.* ¶ 43. Defendants' activities also allegedly disturbed ground within designated riparian buffers in violation of the Permit. *Id.* ¶ 44. According to plaintiff, not all of the disturbed areas within the riparian buffers have been stabilized or restored to prevent silt and sediment-laden stormwater runoff from continuing to enter Rapp Creek and its tributaries. *Id.* ¶ 45.

The Complaint states that defendants' earth disturbance activities resulted in multiple discharges of silt- and sediment-laden stormwater into two of Rapp Creek's tributaries. *Id.* ¶ 46. Discharges allegedly occurred on March 26, 27, and 28, and April 1, 10, 11, and 15 of 2019. *Id.* According to plaintiff, the "silt, sediment, stones, leaves and other forest debris washed into Rapp Creek and/or its tributaries due to the uncontrolled stormwater discharges from Harrow

Manor have not been removed and continue to pollute, impair and occupy portion of the tributaries to Rapp Creek." *Id.* ¶ 49.  Additionally, plaintiff states that a large piece of corrugated pipe from the Harrow Manor development washed into a tributary of Rapp Creek on plaintiff's property.  *Id.* ¶ 50.

### B.  Procedural Background

On March 25, 2019, plaintiff sent a notice of intent to sue Lapio for violations of the CWA and CSL.  Compl. ¶ 5.  On March 29, 2019, plaintiff sent a notice of intent to commence a citizen suit to Lapio, Schlouch, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator for the EPA Region III Office, and the Secretary of the Pennsylvania Department of Environmental Protection ("DEP").  *Id.*

Plaintiff filed the Complaint on July 23, 2019—more than 60 days since Notice was provided as required by the CWA and CSL.  *See* 33 U.S.C. § 1365(b)(l)(A); 35 P.S. § 691.601(e).  In the Complaint, plaintiff seeks a declaration that defendants violated and continue to violate the CWA and CSL, an injunction preventing defendants from continuing to violate the CWA and CSL or an order requiring defendants to prepare and implement a corrective action plan if violations cannot immediately be corrected, an assessment of civil penalties against defendants, and an award of costs and fees.  Compl. at 13.

Lapio and Schlouch filed motions to dismiss on November 15, 2019 (Document Nos. 12, 13).  Plaintiff responded on November 29, 2019.  The motions are thus ripe for decision.

## III.  LEGAL STANDARD

### A.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of jurisdiction over the subject matter" of a case.  The plaintiff has the burden of

establishing subject matter jurisdiction. *See Carpet Group Int'l v. Oriental Rug Imp. Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Without jurisdiction the court cannot proceed at all in any case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citation omitted).

In evaluating a Rule 12(b)(1) motion, the Court must first determine whether the motion "presents a 'facial' attack or a 'factual' attack." *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018). A facial attack "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." *Id.* When ruling on a facial attack, the Court "considers only the complaint, viewing it in the light most favorable to the plaintiff." *Id.* By contrast, a factual attack is an argument that challenges the "factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). When ruling on a factual attack, the Court weighs the evidence and must satisfy itself as to the existence of its power to hear the case. *Id.*

Defendant Lapio presents a factual attack on this Court's subject-matter jurisdiction by attaching to its Motion a Consent Assessment of Civil Penalty entered into between defendants and the DEP in May of 2019 and an Earth Disturbance Inspection Report issued by the DEP in August of 2019. Def. Lapio's Mot. Dismiss Ex. B, C. Lapio contends that these documents show that its violations of the CWA and CSL have been remedied and are "wholly past." *Id.* at 7-8. Defendant Schlouch also presents a factual attack on the Court's subject matter jurisdiction by invoking § 1319(g)(6)(A) of the CWA, which precludes citizen suits for civil penalties where

the state has commenced an enforcement action.[1]  *See PennEnvironment v. RRI Energy Ne. Mgmt. Co.*, 744 F. Supp. 2d 466, 469 (W.D. Pa. 2010).

### B. Rule 12(b)(6)

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint.  *Liou v. Le Reve Rittenhouse Spa, LLC*, No. CV 18-5279, 2019 WL 1405846, at *2 (E.D. Pa. Mar. 28, 2019) (DuBois, J.).  To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  In assessing the plausibility of a plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007).  Such allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  The Court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief.  *Id.* at 680.  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

---

[1] Defendant Schlouch erroneously cites Federal Rule of Civil Procedure 12(b)(6) when invoking § 1319(g)(6)(A) of the CWA, which is a jurisdictional bar.  Def. Schlouch's Mot. Dismiss 6-7.  The Court construes Schlouch's argument under § 1319(g)(6)(A) as being properly raised under Rule 12(b)(1).

## IV. DISCUSSION

### A. Defendant Lapio's Motion to Dismiss

Defendant Lapio contends that plaintiff's Complaint must be dismissed because (1) the Court lacks jurisdiction under the CWA because all alleged violations are "wholly past," and (2) plaintiff fails to state a claim because DEP, acting through the Bucks County Conservation District ("BCCD"), has already taken an enforcement action against defendants and defendants have remedied all alleged violations. Def. Lapio's Mot. Dismiss 5-6. The Court addresses each argument in turn.

#### i. *Allegations of Continuing Violations*

Defendant Lapio argues that plaintiff's Complaint alleges only "wholly past violations" of the CWA and must be dismissed because the CWA only permits citizen suits for ongoing violations. *Id.* at 7, 9. In support of that argument, Lapio cites the Consent Assessment and Inspection Report issued by DEP in support of its position that defendants' violations are not ongoing and have been remedied. *Id.* Lapio thus contends that, because the only basis for the Court's subject matter jurisdiction is the CWA's citizen suit provision, the Court must dismiss the entirety of plaintiff's Complaint in the absence of federal question jurisdiction. *Id.* at 7 n.4. Lapio disagrees with plaintiff's position that defendants' CWA violation is ongoing while silt, sediment and other debris from defendants' discharges remain in the tributaries to Rapp Creek. *Id.* at 8. It argues that "if the mere presence of a single particle of silt or sediment constitutes an ongoing violation, then practically every violation would be forever ongoing under the CWA." *Id.* The Court disagrees with Lapio on this issue.

Under the CWA, any citizen may commence a civil action against any person "alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued

6

by the Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1). In order to plead subject matter jurisdiction, the citizen-plaintiff must allege a "continuous or intermittent violation." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64 (1987) ("*Gwaltney I*"). Conversely, courts are without subject matter jurisdiction over citizen suits for "wholly past violations of the Act." *Id.* at 67. In applying this rule, courts have considered evidence that "the risk of defendant's continued violation had been completely eradicated when citizen-plaintiffs filed suit." *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 844 F.2d 170, 172 (4th Cir. 1988) ("*Gwaltney II*"); *see also Nat. Res. Defense Council, Inc. v. Texaco Refining and Mktg., Inc.*, 2 F.3d 493, 501 (3d Cir. 1993) (adopting the standard set forth by the Fourth Circuit in *Gwaltney II* for analyzing whether a violations are continuous or intermittent). However, at this stage of the proceeding, plaintiffs need only "make a good-faith allegation of continuous or intermittent violation." *Gwaltney I*, 484 U.S. at 64.

In his concurring opinion in *Gwaltney I*, Justice Scalia explained that "[w]hen a company has violated an effluent standard or limitation, it remains, . . . 'in violation' of that standard or limitation so long as it has not put in place remedial measures that clearly eliminate the cause of the violation." *Gwaltney I*, 484 U.S. at 69 (Scalia, J., concurring). In line with this principle, courts have concluded that "violations of the CWA are ongoing against the polluter where the pollutants discharged without a permit or in violation of a permit remain in the waterway." *PennEnvironment v. PPG Indus., Inc.*, 964 F. Supp. 2d 429, 471 (W.D. Pa. 2013); *see also AMA Realty LLC v. 9440 Fairview Ave. LLC*, No. 13–457, 2014 WL 1783099, 2014 WL 1783099 (D.N.J. May 2, 2014) ("[A] violation is considered current, or ongoing, when prior discharges have not been remediated, and the pollutant remains on the property or in the water."). This

7

interpretation accords with the broadly stated purpose of the CWA "to restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

The CWA defines the term "pollutant" broadly to include "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6). Accordingly, courts have held that sediment discharged as part of stormwater run-off constitutes a pollutant. *See Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1525 n.1 (11th Cir. 1996) ("When rain water flows from a site where land disturbing activities have been conducted, such as grading and clearing, it falls within [the definition of 'pollutant']."); *Black Warrior River-Keeper, Inc. v. Drummond Company, Inc.*, 387 F. Supp. 3d 1271, 1283 (N.D. Ala. 2019) ("[S]ediment . . . appears to qualify as 'rock' or 'sand' and, therefore, is also a 'pollutant' under the Act."); *N.C. Shellfish Growers Ass'n v. Holly Ridge Assocs., LLC.*, 278 F. Supp. 2d 654, 676 (E.D.N.C. 2003) ("Sand and dirt, which are the primary components of sediment, are specifically listed as pollutants under the CWA.").

According to plaintiff, as of the filing of the Complaint, defendants continued to be in violation of the CWA and CSL for failing to "stabilize and restore all disturbed areas outside of the E&S Controls they eventually installed, and/or abate silt and sediment deposited into Rapp Creek and its tributaries." Compl. ¶ 2. Plaintiff avers that "[n]ot all of the disturbed areas within the riparian buffers have been stabilized or restored to prevent silt- and sediment-laden stormwater runoff from continuing to enter Rapp Creek and its tributaries." *Id.* ¶ 45. Additionally, plaintiff claims that defendants' violations are ongoing because the "silt, sediment, stones, leaves and other forest debris washed into Rapp Creek and/or its tributaries due to the

uncontrolled stormwater discharges from Harrow Manor have not been removed and continue to pollute, impair and occupy portion of the tributaries to Rapp Creek," and that a large piece of corrugated pipe from the Harrow Manor site washed into a tributary of Rapp Creek. *Id.* ¶¶ 49-50.

Based on these averments, the Court concludes that plaintiff has made "good-faith" allegations that defendants' CWA violations are ongoing based on defendants' failure to remediate prior discharges of pollutants. *Gwaltney I*, 484 U.S. at 64. Defendant Lapio's argument that plaintiff's allegations of continuing violations represent "an absurd interpretation" of the CWA is unavailing. Def. Lapio Mot. Dismiss 8. Lapio would have the Court ignore the plain terms of the CWA's definition of "pollutant" and arbitrarily exclude the instant action from the line of cases that have held that violations of the CWA are ongoing where pollutants remain in the waterway. The Court refuses to do so.

Finally, neither of the documents cited by Lapio demonstrate that plaintiff's allegations are wholly past. The Consent Agreement provides evidence only that the DEP observed permit violations at defendants' construction site—including the discharge of "[s]edminent and other pollutant" into Rapp Creek—and that defendants agreed to pay a penalty along with costs and fees associated with correcting conditions observed at the site. It says nothing about remediating the prior discharges. Def. Lapio's Mot. Dismiss Ex. B. Moreover, the Inspection Report provided by Lapio is dated August 16, 2019—after plaintiff filed his Complaint. Def. Lapio's Mot. Dismiss Ex. C. The Inspection Report does not support Lapio's claim that violations were not ongoing at the time plaintiff filed the Complaint on July 23, 2019.

Thus, the Court concludes that it has subject matter jurisdiction over plaintiffs' claims on the present state of the record. This ruling is without prejudice to Lapio's right to raise the issue

after completion of discovery by motion for summary judgment and/or at trial if warranted by the facts and applicable law as stated in this Memorandum. *See Manuel v. NRA Group LLC*, 722 F. App'x 141, 145 n.6 (3d Cir. 2018) ("[O]bjections that relate to subject matter jurisdiction may be raised at any time") (internal quotation omitted).

### ii. Diligent Prosecution Bar

Lapio further argues that plaintiff fails to state a claim because his citizen suit is prohibited under the CWA's diligent prosecution bar. Def. Lapio's Mot. Dismiss 10. The Court disagrees.

Section 1365(b)(1)(B) provides that citizen suits may not be brought "if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order." 33 U.S.C. § 1365 (b)(1)(B). Courts consider the bar nonjurisdictional and thus evaluate it under Rule 12(b)(6).[2] *See Louisiana Envtl. Action Network v. City of Baton Rouge*, 677 F.3d 737, 745-49 (5th Cir. 2012) (*per curiam*). "[W]hen a state or federal agency diligently prosecutes an underlying action in court, the [CWA's] diligent prosecution bar will prohibit citizen suits during the actual litigation as well as after the litigation has been terminated by a final judgment, consent decree, or consent order and agreement." *Godfrey v. Upland Borough*, 209 F. Supp. 3d 804, 809-10 (E.D. Pa. 2016) (quoting *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 132 (3d Cir. 2016) (interpreting the CAA's nearly identical provision)).

---

[2] In evaluating Lapio's diligent prosecution bar argument under Rule 12(b)(6), the Court reviewed the Consent Assessment of Civil Penalty as it is a matter of public record. "Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include . . . letter decisions of government agencies . . . and published reports of administrative bodies." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, Inc., 998 F.2d 1192, 1197 (3d Cir. 1993) (internal citations omitted).

In order for the diligent prosecution bar to apply, the state or federal agency must have prosecuted an action "in court." *Grp. Against Smog & Pollution, Inc.*, 810 F.3d at 132. Accordingly, courts refuse to apply the CWA's diligent prosecution bar where no civil or criminal action has been filed by the state or federal government. *See, e.g.*, *Black Warrior Riverkeeper, Inc. v. Birmingham Airport Auth.*, 561 F. Supp. 2d 1250, 1254 (N.D. Ala. 2008) ("As no 'civil or criminal action' case has been filed by [the state agency] against either of these defendants 'in a court,' [33 U.S.C. § 1365(b)(1)(B)] is inapplicable.").

In this case, Lapio cites no civil or criminal action filed by either the EPA or DEP. Rather, Lapio cites the CACP as evidence that "the state acted immediately after it received Plaintiff's 60 Day Notice." Def. Lapio's Mot. Dismiss 11. Lapio attempts to argue that, because the state assessed fines, plaintiff's citizen suit is barred.[3] Lapio's argument is without merit under the CWA's diligent prosecution bar absent a civil or criminal action filed by the Government "in a court." 33 U.S.C. § 1365(b)(1)(B). The Court thus concludes that the CWA's diligent prosecution bar is inapplicable to the instant action.

    *iii.    Conclusion*

For the foregoing reasons, the Court denies defendant Lapio's Motion to Dismiss without prejudice to its right to raise its challenge to the Court's subject matter jurisdiction after completion of discovery by motion for summary judgment and/or at trial if warranted by the facts and applicable law as stated in this Memorandum.

---

[3] Lapio cites language from the Supreme Court decision in *Gwaltney* stating that "[i]f the Administrator or the State commences enforcement action within that 60-day period, the citizen suit is barred, presumably because governmental action has rendered it unnecessary." 484 U.S. at 59. However, the CWA clearly requires that the federal or state government have diligently prosecuted "a civil or criminal action *in a court*." 33 U.S.C. § 1365(b)(1)(B) (emphasis added).

**B. Defendant Schlouch's Motion to Dismiss**

Defendant Schlouch contends that the Complaint must be dismissed because (1) plaintiff's Complaint is barred under § 1319(g)(6) of the CWA because of DEP commenced an enforcement action against defendants and defendants took the remedial action required, and (2) the Court should afford great deference to the state's enforcement action. Def. Schlouch Mot. Dismiss 7-9. The Court addresses each argument in turn.

      *i.*      *Preclusion Under 33 U.S.C. § 1319(g)(6)*

Defendant Schlouch argues that § 1319(g)(6) of the CWA limits a citizens ability to bring suit under the Act "if there is enforcement by the [EPA] or [DEP]." Def. Schlouch's Mot. Dismiss 8. Schlouch contends that if the relevant agency "requires corrective action or assesses an administrative penalty, an individual or group seeking to file a citizen suit is precluded from doing so." *Id.* Schlouch notes that the DEP and BCCD required corrective action at the construction site and assessed administrative penalties through the Consent Assessment. *Id.* at 9. Defendant cites the DEP's Inspection Report as evidence that the violations were settled as of August of 2019. Defendant argues that, once the Consent Assessment became final, plaintiff was barred from bringing his citizen suit. *Id.*

Section 1319(g)(6) of the CWA precludes citizen suits for civil penalties where there has been a prior enforcement action by the federal or state government and administrative penalties were assessed. 33 U.S.C. § 1319(g)(6); *see also RRI Energy Ne. Mgmt. Co.*, 744 F. Supp. 2d at 471-72. Specifically, the statute provides that a citizen suit cannot be brought regarding violations "with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection" or "for which the Administrator, the Secretary, or the State has issued a final order not subject to further judicial review and the violator has paid

a penalty assessed under this subsection, or such comparable State law, as the case may be." *Id.* § 1319(g)(6)(A)(ii)-(iii).  Courts consider § 1319 (g)(6) to be a "jurisdictional bar" properly considered under Rule 12(b)(1).  *See Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Continental Carbon Co.*, 428 F.3d 1285, 1291-92 (10th Cir. 2005).

> This limitation does not apply, however, with respect to any violation for which:
>
>> notice of an alleged violation of section 1365(a)(1) of this title has been given in accordance with section 1365(b)(1)(A) of this title prior to commencement of an action under this subsection and an action under section 1365(a)(1) of this title with respect to such alleged violation is filed before the 120th day after the date on which such notice is given.

*Id.* § 1319(g)(6)(B)(ii).  Courts have applied this provision strictly, holding that "all of the limitations against a citizen suit as provided for in § 1319(g)(6)(A), which include federal and state administrative enforcement actions, are lifted so long as § 1319(g)(6)(B)'s notice and filing requirements are met."  *Black Warrior Riverkeeper, Inc. v. Cherokee Mining*, 548 F.3d 986, 992 (11th Cir. 2008).  Put simply, if notice has been given prior to the commencement of an enforcement action and the citizen-plaintiff files suit within 120 days of the notice, the citizen suit is not preempted.  *See Pub. Interest Research Grp. of N.J. v. Yates Indus., Inc.*, 757 F. Supp. 438, 444 (D.N.J. 1991).  The question for the Court is therefore whether DEP commenced its enforcement action prior to plaintiff's notice of intent to sue.

Plaintiff sent his notice of intent to commence a citizen suit to Lapio, Schlouch, the Administrator of the EPA, the Regional Administrator for the EPA Region III Office, and the Secretary of the DEP on March 29, 2019.  Compl. ¶ 5.  According to the Consent Assessment, at that time, the DEP, acting through the BCCD, had previously conducted a single inspection of the site on March 27, 2019.  Def. Schlouch Mot. Dismiss Ex. B at 2.  The Consent Assessment itself was not entered into until May 28, 2019.  *Id.* at 1.  Though "commencement of an action"

is not defined under the CWA, courts have held that an enforcement action is not commenced at the initial inspection but instead when a specific penalty is issued pursuant to state laws or regulations that provide for due process protections. *See, e.g.*, *Pub. Interest Research Grp. of N.J., Inc. v. Elf Atochem N. America, Inc.*, 817 F.Supp. 1164, 1172-73 (D.N.J. 1993) (holding that reports issued after inspection served only to "warn defendant that an enforcement action might be initiated in the future" and that enforcement proceeding was not commenced until penalty was proposed).

Plaintiff's notice of intent to commence a citizen suit was sent to the required parties prior to commencement of the enforcement action, and plaintiff's suit was filed within 120 days of the notice. Thus, the Court concludes that plaintiff's suit is not barred under § 1319(g)(6) because the enforcement action was not commenced prior to plaintiff's March 29, 2019 notice.

> ii.   *Deference to DEP's Enforcement Action*

Defendant Schlouch next contends that the Court should dismiss plaintiff's Complaint because DEP and BCCD's enforcement actions "are entitled to great deference." Def. Schlouch's Mot. Dismiss 11. Schlouch argues that, "[w]hen government agencies exercise their delegated authority to enforce environmental laws, especially where the agency is already substantively addressing the same alleged violation that a private citizen wants remedied, the agency's decision is entitled to great deference." *Id.*

The decisions cited by Schlouch in support of this argument address a narrow question—specifically, the deference that should be given to an agency with regards to whether the agency is "diligently prosecuting" its enforcement action. 33 U.S.C. § 1319(g)(6)(ii). The decisions either do not address or explicitly rule out the exception to § 1319(g)(6) for citizen plaintiffs that give notice prior to the commencement of an enforcement action. *See Arkansas Wildlife Fed'n*

14

*v. ICI Americas. Inc.*, 29 F.3d 376 (8th Cir. 2004) (notice of intent to file citizen suit filed after defendant entered into a consent administrative order with agency); *N. & S. Rivers Watershed Ass'n v. Town of Scituate*, 949 F.2d 552 (1st Cir. 1991) (not discussing § 1319(g)(6)(B) but noting that citizen suit was not initiated until more than a year after administrative order issued). The Court concludes that any "deference to the agency's plan of attack" is appropriate only if notice is not sent prior to institution of an enforcement action and plaintiff challenges whether the Government's administrative action is still being diligently enforced. *Scituate*, 949 F.2d at 557.[4] As the Court has already decided that the § 1319(g)(6) bar does not apply in this case, the question of deference to the agency is irrelevant.

### iii. Conclusion

The Court denies defendant Schlouch's Motion to Dismiss. This ruling is without prejudice to Schlouch's right to raise its challenge to the Court's subject matter jurisdiction under 33 U.S.C. § 1319(g)(6) after completion of discovery by motion for summary judgment and/or at trial if warranted by the facts and applicable law as stated in this Memorandum.

### V. CONCLUSION

For the foregoing reasons, those parts of defendants' motions seeking dismissal of plaintiff's claims for lack of subject matter jurisdiction are denied without prejudice to defendants' right to raise that issue after completion of discovery by motion for summary judgment and/or at trial if warranted by the facts and applicable law as set forth in this Memorandum. Defendants' motions are denied in all other respects.

---

[4] Defendant Schlouch also cites a decision by the Commonwealth Court of Pennsylvania, holding that "agencies are entitled to deference in interpreting the statutes that they enforce." *Sunoco, Inc. v. Dept. of Envtl. Prot.*, 865 A.2d 960, 971 (Pa. Cmwlth. 2005) (quoting *Shawnee Dev., Inc. v. Commonwealth*, 799 A.2d 882, 889 (Pa. Cmwlth. 2002), *aff'd*, 572 Pa. 665 (2003)). Schlouch fails to explain how the DEP's interpretation of any statute is relevant to its Motion. Thus, *Sunoco* provides no support for its Motion.

An appropriate order follows.